**In re Deanne OSTER and Russell Oster, Debtors.**

**William G. Schwab, Trustee for Ellsworth F. Neikum, Movant,**

v.

**Deanne Oster and Russell Oster, and Robert Sheils, Trustee, Respondents.**

No. 5–99–04458.

United States Bankruptcy Court, M.D. Pennsylvania.

Nov. 9, 2000.

Robert S. Frycklund, William G Schwab & Associates, Lehighton, PA, for Movant.

Lisa M. Doran, Doran & Nowalis, Wilkes–Barre, PA, for Debtors/Respondents.

## OPINION

JOHN J. THOMAS, Bankruptcy Judge.

The sequential filing of two bankruptcies has generated rather unique issues which I now address.

On May 25, 1999, Ellsworth F. Neikum filed a chapter seven bankruptcy. William G. Schwab was appointed the Trustee. After an investigation of Neikum's financial affairs, Schwab instituted suit against Neikum's former spouse, Deanne Oster and her husband, Russell Oster. The Complaint, filed to Adversary No. 5–99–00191A (William G. Schwab, Trustee v. Deanne Oster and Russell Oster (In re Ellsworth F. Neikum, Case No. 5–99–01757)), was entitled Complaint to Set Aside Fraudulent Transfer and to Recover Property or its Value Under 11 U.S.C. § 544. (Doc. # 1A.) An Answer was filed on December 7, 1999. It was followed shortly thereafter by Deanne and Russell Oster's personal bankruptcy. The Trustee reacted to the Oster filing by moving for relief from the automatic stay and objecting to the Osters' exemption schedule. On July 13, 2000, the Objection was sustained inasmuch as the Osters argued that they had no equity over the liens in the property at issue. At the hearing on the relief motion, the Trust-

ee asserted that, on May 13, 1998, Neikum conveyed real estate and household goods to the Osters. The Trustee further argued that this transfer was without consideration and, therefore, constituted a fraudulent conveyance under Pennsylvania law. In his post-trial brief, the Trustee reasoned, "[t]he fraudulently-transferred interest of Ellsworth F. Neikum in the subject property was ineffective to transfer ownership and should not be included as property of the estate of the Debtors [Osters]." (Chapter 7 Trustee's Memorandum of Law in Support of Motion to Reconsider Order Denying Motion for Relief from the Automatic Stay (Doc. # 21) at 4.) At the hearing on the relief motion, the Court denied relief, concluding that the Trustee's claim was no more viable than any other discharged unsecured claim. Since the Trustee neither timely objected to discharge nor the dischargeability of Osters' alleged claim by the Trustee, any obligation to the Trustee was effectively eliminated by the Osters' May 2, 2000 Discharge.

In this pending Motion for Reconsideration, the Trustee relies solely on the case of In re Leo, 33 B.R. 625 (Bankr.E.D.Pa. 1983). In Leo, the trustee's request to reverse a fraudulent transfer of a one-half interest from co-debtor, Barbara Leo, to her husband co-debtor, Albert Leo, was granted under the provisions of 11 U.S.C. § 548. Unfortunately, the rationale of the Leo court for requiring the turnover notwithstanding the discharge or the automatic stay was not addressed. While the Leo case is not all that helpful in analyzing the current facts, it has caused me to reflect on the specific dynamics under which an asset can be recovered from one bankruptcy estate by the trustee for another estate. Regardless of whether I find that the Osters were the recipients of a "fraudulent transfer" under the Pennsylvania Fraudu-

lent Conveyance Act (12 Pa.C.S.A. §§ 5101 to 5110), fairness would suggest that if there was an equitable duty to return property, it should be surrendered to the transferring estate. This may be especially true if the bankruptcy trustee for the Osters declines to exercise the "strong-arm" powers under 11 U.S.C. § 544. In moving for relief, the Trustee did not necessarily argue that the Osters committed a fraud on the Neikum creditors. Rather, the Trustee was asking for the opportunity to prove such fact. This was denied to him by my ruling of April 20, 2000.

The Court finds what has heretofore been the missing ingredient in considering the proper disposition of the pending motion is the trigger words "unjust enrichment." If one estate has been unjustly enriched at the expense of another, then courts have traditionally declared the existence of a constructive trust. To be sure, proving circumstances to implement such a theory would be a daunting task under current case law. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1453 (6th Cir.1994). It is, however, a possibility. *In re Columbia Gas Systems, Inc.*, 997 F.2d 1039 (3d Cir.1993), *cert. denied*, 510 U.S. 1110, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994). While the Osters vehemently argue that their acquisition of the property was at arms length and for fair value, the Court never reached that issue. By denying the Motion for Relief for the reasons that I did, the Court foreclosed that opportunity. In fact, had the Court granted relief, I would have been authorized to try the Trustee's then-pending fraudulent transfer litigation filed to Adversary No. 5–99–0191A against the Osters, at the time scheduled for July 31, 2000.

█ In order to prevail on a motion for relief from the automatic stay, it is the burden of the movant to first establish that there is no equity in the property at issue. 11 U.S.C. § 362(g)(1). To establish that the debtors have no equity, the movant should be given an opportunity to establish that the property at issue is not an administratable asset.

█ It has oftentimes been stated that property interests in bankruptcy are defined by reference to state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Furthermore, it is a well-established principle of Pennsylvania law that trust property is not subject to administration in bankruptcy inasmuch as the debtor retains no equitable interest in such property. Not only is this applicable to express trusts and trusts implied in law, it is also apropos to the fiction known as "constructive trusts." *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 99 (3d Cir.1994).

> A "constructive trust" has been defined to be "a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition of the retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property ... a constructive trust is imposed not to effectuate intention but to redress wrong or unjust enrichment. A constructive trust is remedial in character."

*City of Philadelphia v. Heinel Motors*, 142 Pa.Super. 493, 16 A.2d 761, 765–66 (1940) citing Restatement of the Law of Trusts, Vol. 1, p. 5, Chap. 1, section 1(e).

█ It is typically the burden of the proponent to establish the existence of a constructive trust. *In re Southmark*, 49 F.3d 1111, 1118 (5th Cir.1995), *In re Sacred Heart Hospital of Norristown*, 175 B.R. 543, 555 (Bankr.E.D.Pa.1994). Quite clearly, constructive trusts are not accom-

602

modated in the bankruptcy courts, which favor a prorated distribution of funds to creditors that are similarly situate. *Goldberg v. New Jersey Lawyers' Fund*, 932 F.2d 273, 279 (3d Cir.1991). Nevertheless, it would be manifestly unfair to disallow Trustee Schwab to attempt to establish that the Osters hold the property at issue in "trust" for the Neikum estate. "To establish rights as a trust recipient, a claimant must make two showings: (1) demonstrate that the trust relationship and its legal source exist, and (2) identify and trace the trust funds if they are commingled." *Id.* at 280. In this instance, the Trustee must establish the existence of a constructive trust which arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain." Restatement (First) of Restitution § 160 (1937). This position has been adopted by Pennsylvania. *Balazick v. Ireton*, 518 Pa. 127, 134, 541 A.2d 1130 (1988).

In summary, I am satisfied that the Trustee's Motion for Reconsideration should be granted so that the Trustee is given an opportunity to establish that the Debtor lacks an equitable interest in the property at issue pursuant to the Trustee's burden under 11 U.S.C. § 362(g). Having so concluded, the Motion for Reconsideration is granted and a hearing is set on the Motion for Relief from the Automatic Stay for **Monday, December 4, 2000,** at **10:00** o'clock A.M. in Bankruptcy Courtroom No. 2, Max Rosenn United States Courthouse, 197 South Main Street, Wilkes–Barre, Pennsylvania.

An Order will follow.