**In re Vera Arlene POFFENBARGER, Debtor.**

No. 01–16096.

United States Bankruptcy Court, S.D. Alabama.

March 25, 2002.

Franklin V. Anderson, Mobile, AL, for the Debtor.

Mark Zimlich, Mobile, AL, for the Bankruptcy Administrator.

Lionel Williams, Mobile, AL, for the Chapter 7 Trustee.

ORDER GRANTING DEBTOR'S MOTION TO DETERMINE OWNERSHIP OF FUNDS, DENYING DEBTOR'S ATTORNEY'S MOTION FOR ADDITIONAL ATTORNEYS FEES OUT OF PAST DUE ALIMONY, DENYING MOTION TO CLAIM AS EXEMPT PAST DUE ALIMONY, MOOTING MOTION TO CLAIM AS EXEMPT PAST DUE AND FUTURE CHILD SUPPORT, AND GRANTING IN PART AND DENYING IN PART TRUSTEE'S MOTION FOR TURNOVER

MARGARET A. MAHONEY, Chief Judge.

This case is before the Court on the motion of the debtor to determine ownership, exemption and distribution of postpetition collection of pre– and postpetition child support, and for the allowance of additional attorneys fees for debtor's attorney, and on the motion of the chapter 7 trustee for an order compelling the debtor and her attorney to turn over all funds at issue to the Trustee. This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has the authority to enter a final order. For the reasons indicated and as more particularly set forth below, the Court is granting debtor's motion to determine ownership of funds, is denying debtor's attorney's request for additional attorneys fees out of past due alimony, is denying debtor's motion to claim as exempt funds representing past due alimony, is mooting debtor's motion to claim as exempt funds representing past due and future child support, and is granting in part and denying in part the Trustee's motion for turnover.

## FACTS AND PROCEDURAL HISTORY

The debtor, Vera Arlene Poffenbarger, filed this chapter 7 bankruptcy proceeding on November 30, 1991.[1] On Schedule B, "Personal Property," the debtor listed "alimony" and "back child support" under paragraph 16 entitled "[a]limony, maintenance, support, and property settlements to which the debtor is or may be entitled." Under the words "alimony" and "back child support" on Schedule B, the debtor lists "Kenneth M. Poffenbarger." Kenneth Poffenbarger is the debtor's ex-husband (see, e.g., Exhibits 2, 5) and is the person who owes child support and alimony to the debtor. As to the alimony, Schedule B lists "5200" in the column entitled "current market value of debtor's interest in property without secured claim or exemption." As to the back child support, debtor lists "5816" in this column. Thus, the debtor apparently claims a total due of $11,016 for back child support and alimony. The debtor's Statement of Financial Affairs shows "income" in the years 2000 and 2001 for alimony and child support as follows:

| AMOUNT | SOURCE |
|---|---|
| $ 1,800.00 | 2001 alimony net of 2000 atty fees paid |
| $ 7,194.00 | 2000 alimony |
| $ 3,921.00 | 2001 child support of 9900 due |
| $10,254.00 | 2000 child support of 10800 due |

(Statement of Financial Affairs, p. 1, ¶ 2). The debtor's Statement of Financial Affairs and Amended Statement of Financial Affairs (the Amendment was filed December 10, 2001) lists the prepetition divorce action (i.e., Poffenbarger v. Poffenbarger) and shows the nature of the proceeding as "collect cs/alimony."

On January 31, 2002, the debtor filed a Motion to Determine Ownership, Exemp-

---

1. Lynn Harwell was appointed interim trustee.

tion and Distribution of Post–Petition Collection of Pre– and Post–Petition Child Support, and for Allowance of Additional Attorney Fees for Debtor's Attorney. The debtor's motion alleges in part as follows:

Debtor's former husband caused to be issued through the State of Alabama a check to the debtor in the amount of $6,862.75 dated January 22, 2002. That check is being held by the debtor's attorney for the convenience of the parties until otherwise directed.

(Motion, ¶ 3). The motion also alleges that the debtor is entitled to a total of $11,016 in prepetition past due child support and alimony. (Motion, ¶ 1). The debtor asks the Court to determine ownership of the funds received and requests that debtor's counsel be awarded reasonable attorneys fees out of these funds. (Motion, ¶¶ 4, 5).

The Bankruptcy Administrator ("BA") filed a response to the debtor's motion on February 5, 2002. The BA's position is that "the funds being held by debtor's attorney represent a prepetition, nonexempt receivable, and should be turned over to the trustee pursuant to 11 U.S.C. § 542(a)." (BA's Response, ¶ 1). The BA contends that additional attorneys fees should not be awarded to debtor's counsel under *In re American Steel Product,* 197 F.3d 1354 (11th Cir.1999), because debtor's counsel is not a "professional person" employed by the estate under 11 U.S.C. § 330. (BA's Response, ¶ 2). Proper notice of the debtor's motion was given on February 6, 2002. On February 25, 2002, the chapter 7 trustee, Lynn Harwell, through her attorney, Lionel Williams, filed a response to the debtor's motion.[2] The chapter 7 trustee adopts the BA's position and requests that the Court, pursuant to § 542(a), issue a turnover order with respect to the funds being held.

The Court held a hearing on the motions on March 5, 2002. The debtor, Vera Poffenbarger, testified at the hearing and several exhibits were introduced. The evidence establishes the following facts pertinent to the motions before the Court:

The debtor married Kenneth Poffenbarger in 1993. They have two children who now live with the debtor. They were divorced in 1999. The debtor's ex-husband was ordered to pay child support of $900 per month, which is due on the 1st of each month; he made some payments, but then stopped. According to debtor, approximately $5,000 of back child support was due at the time her bankruptcy petition was filed.

The debtor (a nonlawyer) testified that she did not claim the back support and alimony as "exempt" because it was her understanding that the law does not allow her to "exempt" these items. Her bankruptcy filing was due at least in part to credit card charges that her husband ran up. The debtor was a co-signatory on these credit card accounts, and her husband had used these cards for a business that he started in 1998. According to the debtor, these cards had a zero balance at the time she parted from her ex-husband.

During the Poffenbarger's marriage, the debtor was taking classes toward a nursing degree. However, after the divorce, with Mr. Poffenbarger's failure to pay support, she has had to work. The debtor has worked as a school bus driver for Adams Middle School. She has also waited tables. She has not had time to study for the nursing certification exam because she is so busy with whatever jobs she can find to make ends meet. She has failed the nursing exam once. She receives food stamps and lives on a gross income of approximately $804 per month. She has not re-

---

**2.** Lionel Williams was employed to represent the Trustee on February 22, 2002.

ceived any child support payments since August 2000. If she had the child support payments, she would use this money for her children. Her children are twin minors.

The debtor received a check in January 2002 from the State of Alabama in the amount of $6,862.75. The check is dated January 22, 2002. The debtor brought the check to her attorney, Franklin V. Anderson, who held the check. The debtor was not sure how the State received the money represented by the check, but testified that her ex-husband said he paid the money to DHR (i.e., Department of Human Resources) since he knew that the debtor had "turned the matter over" to DHR.

Several exhibits were introduced into evidence at the March 5, 2002 hearing. Exhibit 3 is a letter dated May 21, 2001 to Ms. Poffenbarger from Ms. Poffenbarger's divorce attorney, Frances Niccolai. According to this letter—which enclosed a copy of an order from the Mobile County Circuit Court in Ms. Poffenbarger's divorce action—"The back alimony is to be paid directly to you." Exhibit 2 is a copy of a May 14, 2001 order from the Mobile County Circuit Court in Poffenbarger v. Poffenbarger, DR99–502738.10–B, which provides in pertinent part that Ms. Poffenbarger is awarded a judgment against Mr. Poffenbarger as follows: (1) $500 "representing the total child support arrearage as of May 7, 2001" to be satisfied at the rate of $100 per month payable through the Accounts Clerk of the Circuit Court; (2) $8,100 "representing unpaid alimony pursuant to the previous orders of the Court"; and (3) $157 "representing unpaid medical reimbursements as required by the previous orders of the Court." (Exhibit 2.)

Exhibit 5 is a copy of an order of the Circuit Court of Mobile County in DR–99–502738.01–B dated October 5, 2001 which among other things: (1) awarded a judgment to Ms. Poffenbarger for $4,019.61, "said amount representing the total child support arrearage as of September 30, 2001, exclusive of interest"; (2) ordered that child support payments made under a wage withholding order to be paid to "Alabama Child Support Payment Center, P.O. Box 244015, Montgomery, Alabama 36124–4015, (phone: 1–877–774–9513). In the event either party has been assisted by the Department of Human Resources and/or Assistant Attorney General (State of Alabama attorney), then said payments are to be paid through the Alabama Child Support Payment Center, P.O. Box 244015, Montgomery, Alabama 36124–4015, (Phone: 1–877–774–9513)"; and, (3) ordered "[a]ll other child support payments shall be made payable through the Account's Clerk Office, 205 Government Street, Mobile, Alabama 36644–2114." (Exhibit 5.) [3]

Exhibit 4 is a copy of a disbursement statement signed by the debtor dated October 25, 2001. It shows that Ms. Poffenbarger received a net amount of $3,024.73 after payment of attorneys fees and costs from garnishment of a Regions Bank account. The Mobile County Circuit Court's October 5, 2001 order (i.e., Exhibit 5) ordered the Regions Bank funds condemned "in accordance with the Order Condemning and Disbursing Money dated September 4, 2001." (Exhibit 5, ¶ 5).

Exhibit 1 is a copy of a computer printout from the State of Alabama Child Support Enforcement Division concerning the Poffenbarger divorce action that apparently shows an itemization of amounts due

---

**3.** The debtor testified that because she could no longer afford an attorney, she "turned over" the collection matter to DHR (i.e., the State of Alabama).

Ms. Poffenbarger as well as payments received. This printout, which is dated January 28, 2002, is entitled "Court Order Payment Summary." It shows "balances" of $756.86 due in "child support," $157 due in "medical support," and $6,058.27 due in "spousal support." It shows a total received on January 18, 2002 of $6,862.75. Presumably, this printout reflects why the State then issued a check to Ms. Poffenbarger for $6,862.75.

After the March 5 hearing, the debtor's attorney filed a motion to withdraw as counsel for the debtor and gave the $6,862.75 check to the Clerk of the Bankruptcy Court. It is the Court's understanding that the check was then forwarded by the Clerk to Lionel Williams, the attorney for the Trustee, who is holding the check pending a ruling from this Court.

## ISSUES

The primary issues are:

1. Are child support arrearages property of Ms. Poffenbarger's chapter 7 bankruptcy estate under 11 U.S.C. § 541?

2. If child support arrearages are not bankruptcy estate property, then may child support arrearages nevertheless be brought into the bankruptcy estate via the Trustee's "strong-arm" powers under 11 U.S.C. § 544(a)?

3. Are alimony arrearages property of Ms. Poffenbarger's chapter 7 estate under 11 U.S.C. § 541?

4. Is there any "exemption" available for child support and alimony under 11 U.S.C. § 522?

5. Are additional attorneys fees awardable to debtor's counsel from the $6,826.75 check?

■ The Court will address the issues with respect to child support first. Then, the Court will address alimony. The debtor bears the burden of proving that the funds are not property of the estate or are exempt under Alabama or federal law. *In re Lemos,* 243 B.R. 96, 98 (Bankr.D.Idaho 1999) (debtor has burden of proving property not estate property); *In re Harrison,* 216 B.R. 451, 453–54 (Bankr.S.D.Fla.1997) (debtor has burden of proving entitlement to exemption).

## LAW

1. Are Child Support Arrearages Property of the Chapter 7 Bankruptcy Estate Under 11 U.S.C. § 541?

A. Introduction and Governing Law

■ The threshold issue presented to the Court with respect to the portion of the funds determined by the Court to represent payment of past due child support is: Are child support arrearages property of the debtor's chapter 7 bankruptcy estate?[4] The starting point here is 11 U.S.C. § 541. Bankruptcy Code § 541(a)(1) provides in pertinent part that a chapter 7 bankruptcy estate "is comprised of all the following property, wherever located and by whomever held: ... all legal or equitable interests of the debtor in property as of the commencement of the case." As the Eleventh Circuit has recognized, under § 541(a)(1) "[a] debtor's estate in bankruptcy consists of 'all legal and equitable interests of the debtor in property as of the commencement of the case.'" *T & B Scottdale Contractors v.*

---

4. The debtor listed the back child support due as an asset of the estate in Schedule B. The debtor's listing, however, is not determinative of whether this is indeed an asset of her chapter 7 estate. See, e.g., *Zimmerman v. Starnes,* 35 B.R. 1018, 1022 (D.Colo.1984).

*United States,* 866 F.2d 1372, 1376 (11th Cir.1989) (quoting 11 U.S.C. § 541(a)(1)).

 Section 541, however, does not specify what is or what is not an "interest of the debtor in property" so that one may determine the composition of a debtor's estate. *In re Anders,* 151 B.R. 543, 545 (Bankr.D.Nev.1993). Consequently, it is a well "settled principle that property interests and rights are defined by state law." *Redwing Carriers v. Saraland Apartments,* 94 F.3d 1489, 1498 (11th Cir.1996) (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). Stated differently, "[t]he extent and validity of the debtor's interest in property is a question of state law." *T & B Scottdale Contractors,* 866 F.2d at 1376 (citation omitted).

To summarize, then, while federal law creates the bankruptcy estate, [the United States Supreme Court's decision in] Butner and the cases following it establish that state law, absent a countervailing federal interest, determines whether a given property falls within this federal framework.

*American Bankers Insurance Company of Florida v. Maness,* 101 F.3d 358, 363 (4th Cir.1996). Accordingly, this Court must look to Alabama state law in order to determine what "property" interest, if any, the debtor has in the funds representing payment of court ordered child support in order to determine if the child support is estate property. See, e.g., *Redwing,* 94 F.3d at 1498; *T & B Scottdale,* 866 F.2d at 1376; *In re Cannon,* 277 F.3d 838, 849 (6th Cir.2002); *In re Darby,* 226 B.R. 126, 129 n. 11 (Bankr.M.D.Ala.1998); *Anders,*

151 B.R. at 545–46; *In re Butler,* 271 B.R. 867, 870 (Bankr.C.D.Cal.2002); *In re Hambright,* 762 N.E.2d 98, 100 (Ind.2002) (citing *Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992)).[5]

 An examination of the Alabama law concerning the nature of child support and the law of "constructive trusts" reveals that the funds representing payment of past due child support obligations are not "property" of the debtor such that these funds become property of the debtor's chapter 7 bankruptcy estate.

### B. The Alabama Law re Nature of Child Support

The Court's conclusion that the debtor has an insufficient "property" interest under state law in the child support funds for the child support to become estate property is based in part on the following principles found in the Alabama case law.

 First, child support is a fundamental right for the benefit of the minor child, and not for the benefit or support of the custodial parent. *State Department of Human Resources v. Sullivan,* 701 So.2d 16, 17 (Ala.Civ.App.1997); *State Department of Human Resources v. Nathan,* 655 So.2d 1044, 1046 (Ala.Civ.App.1995); *Cunningham v. Cunningham,* 480 So.2d 1238, 1242 (Ala.Civ.App.1985). Indeed, as the Court of Civil Appeals of Alabama has recognized, "it is well settled that minor children have a fundamental right to support from their parents until the minor children reach the age of majority ... Even though child support is paid to the

---

**5.** The appropriate state's law to examine to determine this issue is Alabama. The debtor's Statement of Financial Affairs, Exhibits 1, 2, 3 and 5 introduced at the March 5, 2002 hearing, and debtor's testimony reflect that her divorce proceedings occurred in Alabama and

the orders concerning past due support and/or alimony were entered in Alabama. And, the debtor is an Alabama resident. Moreover, no party objects to application of Alabama law.

custodial parent, it is for the benefit of the minor children." *Sullivan*, 701 So.2d at 17. In fact, the Alabama cases say that child support is for the sole benefit of the minor children. *Ex Parte McWhorter*, 716 So.2d 720, 722 (Ala.Civ.App.1998); *Floyd v. Edmondson*, 681 So.2d 583, 585 (Ala.Civ. App.1996); *State ex rel. Shellhouse v. Bentley*, 666 So.2d 517, 518 (Ala.Civ.App. 1995).

■ Second, child support arrearages cannot be waived or forgiven by a custodial parent. *Sullivan*, 701 So.2d at 17; *Nathan*, 655 So.2d at 1046; *Bentley*, 666 So.2d at 518. "The custodial parent cannot agree to forgive the amount due under a child support arrearage, and the parent cannot waive child support due under a court order." *Sullivan*, 701 So.2d at 17.

Third, the Alabama cases state that child support is for the benefit of the minor child even though paid to a custodian. *State ex rel. Speer v. Haynes*, 392 So.2d 1183, 1185 (Ala.Civ.App.1979), rev'd on other grounds, *Ex Parte Haynes*, 392 So.2d 1187 (Ala.1980); *Binns v. Maddox*, 327 So.2d 726, 728, 57 Ala.App. 230 (Ala. Civ.App.1976).

■ Fourth, the principles espoused by the foregoing cases as well as the various Alabama Code provisions relating to child support, custody, and welfare—see, e.g., Ala.Code §§ 30–3B101 et seq. dealing with custody jurisdiction and §§ 30–3–60 et seq. dealing with withholding orders for support—evidence a very strong public policy in Alabama for the protection and welfare of children. See also Alabama Code § 30–3–1. Other aspects of the Alabama law also demonstrate a strong policy of protecting children. Alabama has promulgated Child Support Guidelines which are found in Rule 32 of the Alabama Rules of Judicial Administration. It has been held that a noncustodial parent's support obligation is determined by Rule 32, and that

application of the Guidelines by a court in determining support is mandatory. E.g., *Robinson v. Robinson*, 795 So.2d 729, 733 (Ala.Civ.App.2001). Moreover, "[t]he primary consideration in awarding child support is the welfare and best interests of the child." *Wylie v. Wylie*, 794 So.2d 1174, 1177 (Ala.Civ.App.2001). As the Alabama Supreme Court recognized over thirty years ago in *Skipper v. Skipper*, "it requires no citation to authority to note that the child is the party with whom the courts are most concerned, and a court of equity will protect and look after the child as a ward of the court." *Skipper v. Skipper*, 283 Ala. 286, 215 So.2d 885, 886 (1968).

Other decisions of the Alabama courts underscore that protection of children is an important public policy of our state. See, e.g., *McCall v. McCall*, 596 So.2d 4, 5–6 (Ala.1992) (Alabama Supreme Court holding that workmen's compensation benefits are not exempt from income withholding orders and/or garnishments for child support arrearages; Court noting that "[b]y basic morality and the laws of the State, a parent is bound to contribute to the support of his minor children" and that the exemption in the Worker's Compensation Act "should not be used to relieve a person from an obligation to support his or her spouse or children.")

Thus, under Alabama law: (1) child support is a fundamental right of the minor child; (2) child support is for the sole benefit of the minor child; (3) child support—even though payable to the custodial parent—is not for the parent's benefit; (4) support arrearages and/or court ordered support due cannot be waived by a custodial parent; and, (5) it is the strong public policy of Alabama in support and custody matters to focus on what is best for the child. Taken together, these principles of the Alabama law lead to the conclusion that from an equitable standpoint child

support payments belong to the minor child and that in Alabama the role of a custodial parent receiving and handling child support payments is more akin to that of a trustee or fiduciary with regard to such funds. The Court agrees with the debtor's counsel that child support funds are held for the benefit of the minor children. And, because it would be inequitable for the custodial parent to retain and use child support money for himself or herself, under the Alabama law a "constructive trust" may be impressed upon these funds for the benefit of the minor children.

### C. The Alabama Law re Constructive Trusts [6]

■ In Alabama, a "constructive trust" is defined and arises as follows:

A constructive trust is a creature of equity that operates to prevent unjust enrichment; such a trust will be imposed when a property interest has either been acquired by fraud or where, in the absence of fraud, it would be inequitable to allow the property interest to be retained by the person who holds it.

*Sledge v. Sledge,* 630 So.2d 461, 464 (Ala. Civ.App.1993) (emphasis added) (quoting *Coupounas v. Morad,* 380 So.2d 800, 803 (Ala.1980)); *Holley v. Holley,* 660 So.2d 608, 610 (Ala.Civ.App.1995).

■ In addition:

Equity may also impress a constructive trust on property in favor of one beneficially entitled thereto against a person, who, against the rules of equity and against good conscience, in any way either has obtained or holds and enjoins

legal title to property that in justice that person ought not to hold and enjoy. *Sledge,* 630 So.2d at 464 (quoting *Brown v. Brown,* 604 So.2d 365, 370 (Ala.1992)).

■ Under the Alabama law, it is unnecessary that there be the presence of fraud, wrongdoing, abuse of a confidential relationship, or other unconscionable conduct in order for a constructive trust to arise. *Brown v. Brown,* 604 So.2d 365, 369–370 (Ala.1992). Essentially, then, a constructive trust may arise "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest . . . ." *Id.* at 370. In such an instance, equity "converts" the holder of legal title into a "trustee." *Id.*

■ Although the Court was unable to locate any reported appellate court decision in Alabama which upheld a trial court imposing a "constructive trust" on funds representing payment of court ordered child support, the Court believes that the Alabama law would allow a "constructive trust" to arise in favor of a minor child in this situation. The Alabama cases say that child support monies are for the sole benefit of the child, not the custodial parent. And, it is the minor child who holds the fundamental right to receive support, which cannot be "waived" by the parent. Considering the Alabama law on child support, it would clearly be inequitable for a custodial parent to retain and use these funds for the parent's benefit because, under the Alabama law, it is not the parent who is the rightful or intended beneficiary of those funds. As the Wyoming Supreme Court has held, "[u]npaid child support is not an asset of the parent but is the chil-

6. State law also determines when/whether property is held by a bankrupt debtor in "constructive trust" for another. *In re Southmark Corporation,* 49 F.3d 1111, 1118 (5th Cir. 1995); *In re General Coffee Corp.,* 828 F.2d 699, 701–04 (11th Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988); *In re Oster,* 261 B.R. 599, 601–02 (Bankr.M.D.Pa.2000).

dren's money which the parent administers in trust for the children's benefit." *Hurlbut v. Scarbrough*, 957 P.2d 839, 842 (Wyo. 1998). Hence, a "constructive trust" arises in favor of the minor child with regard to these funds, and equity "converts" the custodial parent into a "trustee."

The Court's conclusion that the Alabama law would allow imposition of a "constructive trust" with regard to child support funds is supported by several reported decisions of the Alabama appellate courts, although none of these cases involved funds representing payment of court ordered child support. See *Herston v. Austin*, 603 So.2d 976, 979 (Ala.1992) (proper to impose constructive trust on certificate of deposit and savings account that mother gave son even though transfer did not involve fraud, where money was intended to be used to take care of mom and it would therefore be unjust for son to keep the money); *Sledge v. Sledge*, 630 So.2d 461, 464 (Ala.Civ.App.1993) (trial court did not abuse its discretion in imposing a constructive trust on certificates of deposit

established by children's grandfather to be used for children's educational expenses even where grandfather and mother were co-signatories on the certificates of deposit); *Holley v. Holley*, 660 So.2d 608, 610 (Ala.Civ.App.1995) (it was not error to impose a constructive trust on an insurance policy found to have been fraudulently conveyed to avoid a child support obligation); *Brown v. Brown*, 604 So.2d 365, 370 (Ala. 1992) (summary judgment imposing constructive trust on proceeds of life insurance policies for benefit of child affirmed).

■ The *Herston, Sledge, Holley*, and *Brown* cases support the Court's conclusion that the Alabama law would allow a constructive trust to arise in favor of a minor child with regard to child support payments. Moreover, as the Indiana Supreme Court recognized in *In re Hambright*, "[v]iewing child support arrearages as an asset held in trust for the children is supported by larger policy concerns as well." *In re Hambright*, 762 N.E.2d 98, 104 (Ind.2002).[7]

---

7. A prior, prebankruptcy judicial determination of "constructive trust" is not required in order for this Court to conclude that the child support monies are not bankruptcy estate property. See *In re General Coffee Corporation*, 828 F.2d 699, 701–04 (11th Cir.1987) (applying Florida law), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988); *Putnam v. Putnam*, 274 Ala. 472, 150 So.2d 209, 213 (Alabama Supreme Court holding that a constructive trust "arises when the legal title to property is obtained by one in violation, express or implied, of some duty owed to one who is equitably entitled thereto, and when the property thus obtained is held in hostility to his beneficiary's right of ownership"); *In re Vermont Real Estate Investment Trust*, 25 B.R. 813, 816–17 (Bankr.D.Vt.1982); *In re Bengal Trading Corp.*, 12 B.R. 695, 696 (Bankr.S.D.Fla.1981); *In re Unicom Computer Corporation*, 13 F.3d 321 (9th Cir.1994). In fact, there is ample authority to support the conclusion that prior (i.e., prebankruptcy) judicial imposition of a trust is unnecessary. See *In re Foos*, 183 B.R. 149, 157 n. 6 (Bankr.

N.D.Ill.1995). The Court notes that there are cases, however, which do require a prior judicial decision imposing a "constructive trust" on the property claimed to be nonestate property in order for the property to not be included in the bankruptcy estate. *In re Omegas Group*, 16 F.3d 1443, 1449–51 (6th Cir.1994); *In re Lawrence*, 219 B.R. 786, 802 (E.D.Tenn. 1998) (follows Sixth Circuit's decision in Omegas Group); *In re Foos*, 183 B.R. 149, 154–57 (Bankr.N.D.Ill.1995) (same); *In re Baskett*, 219 B.R. 754, 761 (6th Cir. BAP 1998). Under the facts of this case, the Court declines to follow the *Omegas Group, Lawrence, Foos*, and *Baskett* cases on this point of law. It bears noting, however, that after *Omegas Group* was decided, the Sixth Circuit decided *In re McCafferty*, 96 F.3d 192 (6th Cir.1996). In *McCafferty*, the Sixth Circuit distinguished its prior decision in *Omegas Group* and found that a prepetition divorce decree created a "constructive trust" as to certain funds in favor of the party claiming them even though the divorce order did not use the words "constructive trust." *Id.* at

**D. Other Courts Have Found that Child Support is Not Property of the Custodial Parent's Bankruptcy Estate**

The issue presented as to whether child support arrearages are property of a custodial parent's chapter 7 bankruptcy estate is a question of first impression for the Alabama courts; there are no reported opinions in Alabama addressing this issue. There is a split of authority around the country on whether child support arrearages should be included as part of the custodial parent's bankruptcy estate. *In re Antkowiak,* 95 Ohio App.3d 546, 551, 642 N.E.2d 1154, 1157 (Ohio Ct.App.1994) (recognizing split). The cases which hold that child support arrearages are not assets of the custodial parent's bankruptcy estate are: *In re Hambright,* 762 N.E.2d 98, 104 (Ind.2002) (decided by looking to Indiana law on child support; court holding that In re Henady "does not reflect the current status of Indiana law"); *Hurlbut v. Scarbrough,* 957 P.2d 839, 842 (Wyo.1998) (applying Wyoming law); *In re Anders,* 151 B.R. 543, 546 (Bankr.D.Nev.1993) (applying Nevada law); *In re Welch,* 31 B.R. 537, 540 (Bankr.D.Kan.1983) (applying Kansas law); *In re King,* 233 B.R. 176 (Table), 1999 WL 83927 (10th Cir. BAP 1999) (applying Kansas law); *In re Gardner,* 243 F.Supp. 258, 260 (D.Or.1965) (applying Oregon law); aff'd sub nom *Boston v. Gardner,* 365 F.2d 242 (9th Cir.1966); and, *Zimmerman v. Starnes,* 35 B.R. 1018,

1020–22 (D.Colo.1984) (applying California and Colorado law). Although some of these cases arise in a slightly different procedural posture, the substantive holding on the child support issue in each of these cases is the same.[8]

The reported cases which represent the contrary view—i.e., that child support arrearages are property of the custodial parent's bankruptcy estate—are: *In re Harbour,* 227 B.R. 131, 132 (Bankr.S.D.Ohio 1998) (Ohio law); *In re Davis,* 167 B.R. 104, 106–07 (Bankr.S.D.Ohio 1994) (Ohio law); and, *In re Henady,* 165 B.R. 887, 893 (Bankr.N.D.Ind.1994) (Indiana law).[9]

This Court has carefully considered and studied the two lines of authority on this issue and concludes that the weight of authority and more importantly, the better reasoned view, is represented by the *Hambright, Hurlbut, Anders, Welch, King, Gardner,* and *Zimmerman* line of cases. This Court agrees with the Court's conclusion in *Hambright* that "[c]hild support arrearages are held by the custodial parents for the benefit of the children. As such, child support arrearages are not property of the custodial parent, and a trustee in bankruptcy has no interest in them." *Hambright,* 762 N.E.2d at 104. The Court's conclusion is strengthened by the fact that the state laws at issue in *Hambright, Hurlbut, Anders, Welch, King, Gardner,* and *Zimmerman* are very similar in several respects to the Alabama law

194–99. Even though this Court declines to follow *Omegas Group,* were the rule of *Omegas Group* applicable, it arguably would be met here since there were prepetition orders of the domestic relations court which entered judgments for child support arrearages due. (See Exhibits 2 and 5 to March 5, 2002 hearing.)

The Tenth Circuit has noted the holding of the Sixth Circuit in *Omegas Group,* but has not yet adopted it. See *In re Foster,* 275 F.3d 924, 927 n. 2 (10th Cir.2001).

**8.** See also *In re Prettyman,* 117 B.R. 503, 505 (Bankr.W.D.Mo.1990) (under Missouri law child support not property of custodial parent's probate estate).

**9.** There are several unreported decisions of the Ohio bankruptcy courts which also hold that child support arrearages are bankruptcy estate property. See *Antkowiak,* 642 N.E.2d at 1157 (citing unreported Ohio cases).

on child support. Compare, e.g., *Hambright*, 762 N.E.2d at 101; *Hurlbut*, 957 P.2d at 842; and *Anders*, 151 B.R. at 546 with Alabama law on child support cited herein. These cases serve to confirm the Court's conclusion that the child support arrearages are not includable in the custodial parent's bankruptcy estate.

E. Federal Bankruptcy Law is Supportive of Child Support Not Being Considered Bankruptcy Estate Property

█ Federal bankruptcy law also supports the Court's conclusion that child support arrearages are not bankruptcy estate property. Although this Court is mindful that § 541 is intended to be broad in scope, its reach is not limitless. The Eleventh Circuit, for example, has recognized that "[t]he legislative history of 11 U.S.C.A. § 541 makes it clear that funds in the debtor's possession held for a third-party do not become part of the estate in bankruptcy." *T & B Scottdale*, 866 F.2d at 1376 (funds deposited by contractor in account meant for subcontractor's materialmen did not belong to the bankruptcy estate of the subcontractor). The United States Supreme Court has also stated that "[t]he legislative history [of § 541] indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title." *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 2313 n. 8, 76 L.Ed.2d 515, 522 n. 8 (1983); see also *Begier v. IRS*, 496 U.S. 53, 59, 110 S.Ct. 2258, 110 L.Ed.2d 46, 59 (1990) (pursuant to § 541(d) "[b]ecause the debtor does not own an equitable interest in property he holds in trust for another, that interest is not property of the estate"). Although *T & B Scottdale*, *Whiting Pools*, and *Begier* were not cases involving child support as a claimed "trust" res, the foregoing statements in these cases support the Court's conclusion that child support arrearages—which are essentially held in trust for the minor children by the custodial parent—are not includable in the bankruptcy estate of the custodial parent. Because child support funds are held by the custodial parent—who only has technical legal title—for the sole benefit of the child,[10] these funds would appear to be precisely the type of funds which are excluded from a bankruptcy estate under § 541.[11]

In addition to the foregoing, numerous other courts across the country have stated that a bankruptcy estate should not contain property held in trust by the debtor. See, e.g., *In re Alamance Knit Fabrics*, 251 B.R. 293, 295 (M.D.N.C.1999) ("bankruptcy estates should not contain funds entrusted to others"); *In re Foster*,

---

10. The Court recognizes the reality of the situation. Funds used for the benefit of the children often benefit the custodial parent as well. Housing, utilities, and transportation are also used by the parent for instance. This incidental benefit does not change the Court's conclusion.

11. The "Historical and Statutory Notes" to § 541 appear to approve of the concept that property can be held in "constructive trust" for another. ("Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another.

For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed."). The Court notes that "[t]he subject of constructive trusts in bankruptcy has received extensive judicial and academic attention; yet the propriety and handling of constructive trusts remains divided." *In re Cox*, 247 B.R. 556, 571 (Bankr. D.Mass.2000).

275 F.3d 924, 926 (10th Cir.2001) ("Property subject to a trust is not property of the bankruptcy estate"); *McMakin v. Pine Bush Equipment Co.*, 242 B.R. 271, 280 (D.N.J.1999) ("[i]t is well established that where a debtor holds property impressed with a valid trust, the estate will generally hold that property subject to the interest of the beneficiary."). And, the foregoing rule—i.e., that funds held in trust are not part of the estate—applies with equal force to funds impressed with a "constructive trust" by operation of law. *In re Unicom Computer Corporation*, 13 F.3d 321, 324 (9th Cir.1994); *In re Foster*, 275 F.3d 924, 926 (10th Cir.2001); see also *Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 618 (1st Cir.1988). These cases support the Court's conclusion that child support money—which is essentially held in trust for a minor—is outside the reach of the custodial parent's bankruptcy estate.

Further support for this Court's holding is found in Bankruptcy Code § 541(b)(1). Section 541(b)(1) plainly states that "[p]roperty of the estate does not include ... (1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor." Although the legislative history of this Code section discusses powers of appointment, several courts have held that this Code section by analogy applies to a custodial parent's right to collect child support. *Anders*, 151 B.R. at 546; *Welch*, 31 B.R. at 540; *King*,

1999 WL 83927 *3. On this point, these courts have reasoned as follows:

> Like a donee of a power of appointment, a custodial parent is charged with certain responsibilities, yet maintains wide discretion in distributing or selectively spending funds. But, like a power of appointment, a right to collect child support was created for and inures to the sole benefit of someone else.

*Anders*, 151 B.R. at 546 (quoting *Welch*, 31 B.R. at 540).[12]

F. *In re Darby*, 212 B.R. 382 (Bankr. M.D.Ala.1997)

The Bankruptcy Administrator cites the Court to *In re Darby*, 212 B.R. 382 (Bankr.M.D.Ala.1997), as support for the BA's position that the child support is not "exempted" from Ms. Poffenbarger's chapter 7 estate. The Darby case is different. In fact, Darby supports this Court's holding.

The issue in Darby was the debtor's entitlement to exempt certain property from the estate pursuant to Alabama's spendthrift trust provisions found in Alabama Code § 19–3–1(a) and a statute in the Alabama Insurance Code, § 27–14–32. *Darby*, 212 B.R. at 383–84. There was no question in Darby that the property at issue was estate property under § 541. Indeed, the Court in Darby noted that the Debtor's argument that the property was exempt under the Alabama Code amounted to a concession that the property was

---

12. The *Anders*, *Welch*, and *King* courts' reading of § 541(b)(1) is in accord with Eleventh Circuit precedent on statutory construction. The Eleventh Circuit has stated that "interpretation of the Bankruptcy Code must begin with its plain language." *In re Welzel*, 275 F.3d 1308, 1314 (11th Cir.2001) (citation omitted). Section 541(b)(1) says "any power that the debtor may exercise solely" for another's benefit is not property of the estate. "Power" is not defined in 11 U.S.C. § 101 et seq. Black's Law Dictionary defines "power"

as "[t]he right, ability, authority, or faculty of doing something." Black's Law Dictionary 1169 (6th ed. West 1990). This definition would appear to include a custodial parent's right (i.e., "power") to collect child support for the sole benefit of the minor child. The Court need not decide whether § 541(b)(1) reaches something other than powers of appointment. The point here is that this Code section supports the conclusion reached by the Court—namely, that child support arrearages are not estate property.

estate property. *Darby*, 212 B.R. at 384 n. 11. Thus, the issue in *Darby* was entitlement to an exemption, not whether the property was property of the estate under § 541. *Id.* In contrast to *Darby*, the issue here is whether the child support is property of the estate under § 541. It bears noting that the property at issue in *Darby* was the cancellation value of prepaid college tuition contracts which if cancelled, would be payable to debtor after administrative costs and cancellation fees and any tuition costs already paid by the trust fund. *Id.* at 383. In this case, the child support—although technically payable to Ms. Poffenbarger as custodial parent—is for the sole benefit of her minor children. Consequently, *Darby* does not stand for the proposition of law that child support arrearages are property of a custodial parent's chapter 7 bankruptcy estate. Subsequent proceedings in *Darby* reveal that *Darby* actually supports this Court's holding. After the bankruptcy court disallowed the debtor's claim of exemption in the redemption value of the prepaid college tuition contracts, the chapter 7 trustee filed a motion for turnover of the redemption value. *In re Darby*, 226 B.R. 126, 129 (Bankr.M.D.Ala.1998). The debtor's father then filed an adversary proceeding in which he contended "that the bankruptcy estate holds the contracts in trust for the minor children because the contracts were purchased with funds delivered in trust to Larry [i.e., the debtor]."

*Id.* The bankruptcy court held that the minor children's equitable interests in the trust did not become property of the estate and are not subject to the § 544(a) rights and powers of the chapter 7 trustee. *Id.* at 130.[13]

For the above reasons, this Court finds and holds that any portion of the $6,862.75 check determined by the Court to be payment of prepetition child support arrearages is not property of Ms. Poffenbarger's chapter 7 bankruptcy estate. It logically follows that since past due child support is not estate property, neither are future (i.e., postpetition) child support payments. *Anders*, 151 B.R. at 546. Since this Court concludes that the child support is not estate property under § 541, this Court need not reach the issue of whether child support is exempt under § 522.

**2. Is the Minor Children's Equitable Interest in the Back Child Support Subject to the Trustee's Avoidance Powers Under 11 U.S.C. § 544?**

Having concluded that child support arrearages are not property of Ms. Poffenbarger's chapter 7 estate, the next issue is: Can the Trustee's § 544(a) avoidance powers be used to trump the children's equitable interests in the support funds thereby bringing child support monies into the bankruptcy estate anyway if the Trustee were to file such an action?[14] The starting point is 11 U.S.C. § 544.

---

**13.** Debtor's counsel cites the Court to *Pressnell v. Pressnell*, 519 So.2d 536 (Ala.Civ.App. 1987). Pressnell is of little assistance on the issues presented here as this Court has defined the issues. The issue in Pressnell was whether "alimony in gross" is dischargeable in bankruptcy. *Pressnell*, 519 So.2d at 537–38. There is no issue concerning dischargeability before the Court. The Court acknowledges, however, that dicta in Pressnell supports the Court's ruling that future child support payments are not an asset of Ms. Poffenbarger's chapter 7 estate. See *Press-*

*nell, id.* (quoting Annot., 10 A.L.R. Fed. 881, 891, 1972 WL 31786 (1972)).

**14.** "If a trustee is successful in bringing an action under section 544, then section 541(a)(3) provides that any property recovered under section 550 by the trustee becomes property of the estate." *In re Cowles*, 143 B.R. 5, 8 (Bankr.D.Mass.1992). Although the trustee has filed no action to date, the Court concludes that a discussion of this issue is appropriate to thoroughly cover the status of child support in Ms. Poffenbarger's case.

As the court stated in the *Darby* case, "[u]nder 11 U.S.C. § 544(a)(1) the chapter 7 trustee has, as of the commencement of the case, the status of a creditor with a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien." *Darby*, 226 B.R. at 130 (footnote omitted). Section 544(a) is commonly referred to as the "strong-arm" provision of the Bankruptcy Code, for its "permits a trustee to avoid secret liens against property in the debtor's possession." *In re General Coffee Corp.*, 828 F.2d at 704. This Code section "grants a trustee the rights of an essentially ideal lienholder against property in which the debtor does not possess complete title." *Id.* at 704. "The rights of the trustee as a hypothetical judicial lien creditor are determined by state law." *Darby*, 226 B.R. at 130.

The Eleventh Circuit has never resolved the recognized "tension" between § 541(d)—which excludes certain equitable interests from a bankruptcy estate—and § 544(a), the trustee's "strong-arm" powers provision. *General Coffee*, 828 F.2d at 704–06; *In re Abrass*, 268 B.R. 665, 682 (Bankr.M.D.Fla.2001). Generally, there are two views in the case law on how these two Code sections relate to each other. *General Coffee*, 828 F.2d at 705; *Abrass*, 268 B.R. at 681–82. One line of cases say that § 541(d) "prevails over the trustee's strong-arm powers under § 544(a)." *General Coffee*, 828 F.2d at 705. This is the minority approach. *Id.* Under this view, a constructive trust beneficiary's interest in trust assets never comes into the bankruptcy estate, and the estate holds the property subject to the interest of the trust beneficiary. *Id.* at 705–06.

The second view of how § 541(d) and § 544(a) interrelate is represented by the majority of cases which hold "that sections 541(d) and 544(a) operate independently."

*Id.* at 705. Under this approach, "property not part of the estate under § 541(d) may come into the estate under § 544(a)." *Id.*

The Court need not decide the issue of how § 541(d) fits with § 544(a), for the result reached here is the same under either approach. Under the minority view, the minor children's equitable interests in the child support payments do not come into Ms. Poffenbarger's bankruptcy estate. *Id.* at 705–06. Under this view, since the child support funds are held in constructive trust for the sole benefit of the minor children, the estate "succeeds only to the title and rights in the property that the debtor possessed . . . [t]herefore . . . the estate will generally hold such property subject to the outstanding interest of the beneficiaries." *Id.* at 705–06 (quoting *Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 968 (5th Cir. 1983)). Because § 541(d) trumps the Trustee's § 544(a) avoidance powers under this view, the minor children are entitled to the child support monies and they do not come into the estate. *Id.* at 706. Application of the majority view yields the same conclusion. Under this view, property not part of the estate under § 541(d) may nevertheless come into the estate via the Trustee's avoidance powers of § 544(a). *Id.* at 705–06. Thus, the question becomes: does a hypothetical judicial lien creditor have priority over a constructive trust beneficiary to the "trust" assets, here the child support monies? *Id.* at 706.

The Court has been unable to locate any Alabama case which squarely addresses who would be entitled to priority in this situation. The Eleventh Circuit, however, applying Florida law has held as follows in the absence of any Florida precedent on this priority question:

We believe . . . that for purposes of priority in bankruptcy a constructive trust

beneficiary should have the same rights to the trust assets that a beneficiary of an express trust would have. An express trust beneficiary clearly has priority to trust assets over a judicial lienholder or execution creditor.

*Id.* at 706 (footnote omitted). Thus, under *General Coffee*, the minor children have priority over the chapter 7 trustee to the child support monies. *Id.;* see also *In re Darby*, 226 B.R. at 130 (court holding that under Alabama law a hypothetical judicial lien creditor would not prevail over a minor children's equitable interests in an express trust) and *Abrass*, 268 B.R. at 681 (court noting that in the Eleventh Circuit "[e]xpress trust beneficiaries have priority to trust assets over judicial lienholders or execution creditors").

Consequently, the Court concludes as the Eleventh Circuit did in *General Coffee* that there is no need to decide which view to adopt on the "541(d) versus 544(a)" issue. See *General Coffee*, 828 F.2d at 705. The result here is the same regardless of which view is applied—the minor children win over the trustee.

3. Are Alimony Arrearages Property of the Estate Under § 541?

■ To the extent that any portion of the $6,826.75 check is determined by the Court to be payment of back alimony due (which was reduced to judgment prior to Ms. Poffenbarger's bankruptcy filing), are unpaid judgment alimony arrearages property of the estate under 11 U.S.C. § 541? It has been held that "[t]he debtor's interest at the petition in unpaid alimony became property of this Chapter 7 estate."

*In re Storey*, 172 B.R. 872, 875 (Bankr. M.D.Tenn.1994) (citations omitted); *Anders*, 151 B.R. at 547 ("The law is fairly clear that a recipient of spousal support has a 'property right' or 'property interest' in a spousal support payment which has already accrued."); see also *In re Harbaugh*, 257 B.R. 485, 489 (E.D.Mich.2001) (court citing Legislative History of 1978 Bankruptcy Reform Act and noting that status of alimony changed "by bringing it under the newly broadened umbrella of the bankruptcy estate.").

In the *Storey* case, the debtor filed a chapter 7 bankruptcy, and two days later the debtor's ex-husband paid $10,000 to resolve a state court contempt proceeding which had been instituted for nonpayment of alimony. *Storey*, 172 B.R. at 873. Although the primary issue in *Storey* was the debtor's right to exempt the alimony under Tennessee law (Tennessee is an "opt-out" state), the court held that the debtor's interest in the unpaid alimony was bankruptcy estate property. *Id.* at 875. Under *Storey*, Ms. Poffenbarger's interest in the unpaid judgment for alimony is property of her chapter 7 bankruptcy estate. *Id.* This is consistent with how the Alabama law treats unpaid alimony. In Alabama, "[p]ayments of alimony and child support constitute final judgments from the date that they become due." *Glenn v. Glenn*, 626 So.2d 638, 640 (Ala.Civ.App. 1993); *Taylor v. Taylor*, 640 So.2d 971, 975 (Ala.Civ.App.1994). Thus, any portion of the $6,862.75 check determined by the Court to be payment of the past due alimony is estate property.[15]

---

**15.** 11 U.S.C. § 541(a)(5) provides that certain property which the debtor "acquires or becomes entitled to acquire" within 180 days after the bankruptcy filing date becomes estate property. This includes property acquired "as a result of a property settlement agreement with debtor's spouse, or of an in-

terlocutory or final divorce decree." 11 U.S.C. § 541(a)(5)(B). It is the Court's understanding that the debtor requests that the Court determine ownership of the $6,862.75 check being held by Trustee's counsel. The record establishes that there is far more than $6,872.75 due in unpaid alimony and past

### 4. Is There an Exemption for Back Alimony Due?

The remaining alimony issue for determination is whether back alimony due may be exempted by Ms. Poffenbarger. The applicable law is clear that Ms. Poffenbar-·ger is not entitled to exempt the back alimony due.

"By virtue of the Ala.Code § 6–10–11 (1980), Alabama has 'opted out' of the federal exemption scheme set forth in 11 U.S.C. § 522(d)." *In re Harrell,* 72 B.R. 107, 110 n. 2 (Bankr.N.D.Ala.1987). Normally under 11 U.S.C. § 522, a debtor "is authorized to exempt from property of the bankruptcy estate property specified in section 522(d) except where state law has specifically forbidden the taking of these federal exemptions." *In re Satterwhite,* 28 B.R. 178, 180 (Bankr.M.D.Ala.1983) (emphasis added), rejected on other grounds by *First Alabama Bank of Montgomery v. Mims,* 66 B.R. 20, 21–23 (M.D.Ala.1986). Since Alabama has "opted out" pursuant to Code § 6–10–11, a debtor is required in an Alabama bankruptcy proceeding to chose only those exemptions set out in the Alabama law and in any other applicable federal law, and a debtor is not allowed the exemptions set out in 11 U.S.C. § 522(d). *Id.;* Alabama Code § 6–10–11 ("In cases instituted under the provisions of Title 11 of the United States Code entitled 'Bankruptcy,' there shall be exempt from the property of the estate of an individual debtor only that property and income which is exempt under the laws of the State of Alabama and under federal laws other than subsection (d) of Section 522 of said Title 11 of the United States Code."); *Anders,* 151 B.R. at 548 ("when a state in

which a Bankruptcy Court sits and in which the individual debtor resides 'opts out' of the federal exemptions, only property exempted from execution by other federal or state law may be exempted from the bankruptcy estate"); see also *In re Storey,* 172 B.R. 872, 875 (Bankr. M.D.Tenn.1994) (extent of exemption in Tennessee bankruptcy proceeding for unpaid alimony determined by reference to Tennessee law).

■■■ Unfortunately for the debtor, this Court has been unable to locate any exemption in the Alabama law or any other applicable federal law (i.e., other than § 522(d) of Title 11) which provide an exemption for back alimony due. The debtor states in her motion that "the debtor was and is unaware of any applicable exemption." (Motion, ¶ 1). The debtor (although a nonlawyer) also testified that she was not aware of any such exemption. In addition, "[e]xemptions ... are purely creatures of statute. No matter how strong may be the equitable considerations that support the creation of an exemption, this Court has no authority to enlarge the legislature's designation." *In re Garrett,* 225 B.R. 301, 303 (Bankr.W.D.N.Y.1998); see also *In re Panza,* 219 B.R. 95, 97 (Bankr.W.D.Pa.1998) ("The right to claim an exemption is a statutory creation and is not derived from 'equitable' (or other) considerations. If an exemption is not allowed by statute, it is not allowable."). Under these circumstances, the Court must conclude that there is no exemption for the back alimony due to Ms. Poffenbarger. See *Anders,* 151 B.R. at 548 (court holding that it "may not infer that an

due and/or postpetition child support. The Court has ruled that any portion of the check found to be child support is not estate property under § 541. And, the Court has ruled that any portion of the check determined to

represent payment of past due alimony is property of the estate. Consequently, as the Court understands the record, there is no need for the Court to determine whether § 541(a)(5)(B) applies.

exemption exists where it has not been specifically provided by the legislature.").[16]

### 5. Are Additional Attorneys Fees Awardable to Debtor's Counsel From the $6,826.75 Check?

Because this Court concludes that the past due and future child support is not estate property under § 541, this Court has no jurisdiction over the debtor's attorney's request for additional attorneys fees out of funds representing payment of child support. And, to the extent any of the funds are determined by the Court to be back alimony and, consequently, part of the bankruptcy estate, debtor's attorney's fee request from back alimony is denied on the authority of *In re American Steel Product*, 197 F.3d 1354 (11th Cir.1999). See *American Steel Product*, 197 F.3d at 1357. Debtor's attorneys fees request "as an administrative expense for preparing and presenting" debtor's motion (see Motion, ¶ 4) is likewise denied. *American Steel Product*, 197 F.3d at 1357.

### CONCLUSION

For the above reasons, the Court is granting debtor's motion to determine ownership of funds, is denying debtor's attorney's request for additional attorneys fees out of past due alimony, is denying debtor's motion to claim as exempt funds representing past due alimony, is mooting debtor's motion to claim as exempt funds representing past due and future child support, and is granting in part and denying in part trustee's motion for turnover.

The record is unclear as to precisely what portion of the $6,826.75 check represents payment of past due and/or postpetition child support and what portion, if any, represents payment of past due alimony, necessitating that the Court hold a further hearing. Nevertheless, the Court can address and decide the legal issues presented.

For the foregoing reasons, IT IS ORDERED as follows:

1. The debtor's motion to determine ownership of the $6,862.75 check is GRANTED as follows: Any portion of the $6,862.75 check determined by the Court to be payment of past due and/or future child support is to be paid to the debtor to be used for the benefit of her minor children. Any portion of the $6,862.75 check determined by the Court to be payment of back alimony due is to be paid over to the chapter 7 trustee.

2. The debtor's motion to exempt that portion of the $6,826.75 check determined by the Court to be payment of past due and/or future child support is MOOT as said funds are not property of the chapter 7 bankruptcy estate. The debtor's motion to exempt any portion of the $6,826.75 check determined by the Court to be payment of past due alimony is DENIED.

3. The debtor's attorney's motion for allowance of additional attorneys fees is

---

**16.** The Trustee's attorney cites the Court to *In re Edwards*, 255 B.R. 726 (Bankr.S.D.Ohio 2000); *In re Harbour*, 227 B.R. 131 (Bankr. S.D.Ohio 1998); and, *In re Ellertson*, 252 B.R. 831 (Bankr.S.D.Fla.2000). All of these cases involved construction of state law exemptions for alimony and child support similar (and in one case identical) to the exemption found in 11 U.S.C. § 522(d)(10)(D). See *Edwards*, 255 B.R. at 727–28 (Ohio statutory exemption); *Harbour*, 227 B.R. at 133 (same);

*Ellertson*, 252 B.R. 831 (Florida statutory exemption, which adopts 11 U.S.C. § 522(d)(10)(D)).

Alabama has "opted-out" of the federal bankruptcy exemption scheme and, unlike Ohio and Florida, Alabama has not adopted any statutory exemptions for alimony or child support. Consequently, the cases cited by the Trustee are of little value in determining whether there is an Alabama state law exemption for unpaid alimony.

DENIED to the extent any portion of the $6,862.75 check is determined to be payment of past due alimony. Debtor's attorneys fees request "as an administrative expense for preparing and presenting" debtor's motion (see Motion, ¶ 4) is likewise DENIED. *American Steel Product*, 197 F.3d at 1357. The Court has no jurisdiction over debtor's attorney's fee request out of any portion of the $6,862.75 check which is determined by the Court to be payment of past due and/or future child support.

4. The Trustee's motion for turnover is DENIED to the extent any portion of the $6,862.75 check is determined to be for payment of past due and/or future child support. The Trustee's motion is GRANTED to the extent any portion of the $6,862.75 check is determined to be payment of past due alimony.

5. This matter is reset for hearing on April 16, 2002 at 8:30 a.m. at U.S. Bankruptcy Court, 201 St. Louis Street, Courtroom No. 2, Mobile, Alabama for the parties to try the issue of what portion of the $6,862.75 check being held by the attorney for the Trustee is for child support and what portion, if any, is for past due alimony.